UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH CORTESE,

Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

No. 16-cv-4217 (RJS)
OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge:

Plaintiff Joseph Cortese brings this action pursuant to § 205(g) of the Social Security Act

(the "Act"), 42 U.S.C. § 405(g), appealing the final decision of the Commissioner of the Social

Security Administration denying Plaintiff's application for Disability Insurance Benefits.  Now

before the Court are the parties' cross-motions for judgment on the pleadings under Federal Rule

of Civil Procedure 12(c).  (Doc. Nos. 13, 17.)  For the reasons set forth below, Defendant's motion

is granted and Plaintiff's motion is denied.

## I.  BACKGROUND

Plaintiff was born on January 18, 1964 and was fifty years old at the time his claims were

denied.[1]  (R. 20.)  He is a college graduate, and, from 1990 to 2010, worked as a sales manager at

a manufacturing firm.  (*Id.* at 276–77.)  Plaintiff suffers from bipolar disorder, anxiety, depression,

gout, neuropathy, and arthritis.  (*Id.* at 12.)  He also has a history of substance abuse.  (*Id.* at 12,

---

[1] The facts are drawn from the administrative record (Doc. No. 12) filed by the Commissioner of Social Security and
will be cited as "R. __."  The Court has also considered the Commissioner's memorandum of law in support of her
motion for judgment on the pleadings (Doc. No. 14), Plaintiff's memorandum of law in support of his motion for
judgment on the pleadings (Doc. No. 18), and the Commissioner's reply memorandum of law (Doc. No. 19).

62.) Plaintiff lives with a roommate and has been dating his girlfriend for five years. (*Id.* at 60–61.)

In October 2010, Plaintiff quit his job due to issues with concentration, forgetfulness, anxiety, and depression. (*Id.* at 72–73.) On April 22, 2012, he filed an application for Disability Insurance Benefits, arguing that he had been disabled since October 15, 2010. (*Id.* at 93.) That application was ultimately denied on September 6, 2012. (*Id.* at 101.)

On October 26, 2012, Plaintiff was admitted to a detox clinic at Good Samaritan Hospital in Suffern, New York on "legal recommendations" after two driving-while-intoxicated arrests. (*Id.* at 334.) At the time, Plaintiff reported that he had been drinking one-to-two liters of vodka a day, had been using Vicodin and OxyContin, and had previously attended at least seven detox programs. (*Id.*) Plaintiff checked out of the program three days later – against medical advice – and claims that, with the exception of two days of relapse, he has been sober since. (*Id.* at 62, 334–35.)

On December 14, 2012, Plaintiff filed a second application for Disability Insurance Benefits, claiming that he had been unable to work due to his disability since September 7, 2012, the day after his first application was denied. (*Id.* at 210.) On April 3, 2013, the Commissioner initially denied the claims (*id.* at 120–28), and on April 16, 2013, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") (*id.* at 129). Plaintiff, who was represented by counsel, appeared for an administrative hearing on April 8, 2014 but "was not allowed in the hearing room by the guard as he appeared intoxicated and/or under the influence, and as a result, his representative indicated that she did not believe that the claimant would be able to provide any meaningful testimony." (*Id.* at 10; *see also id.* at 44–46.) On July 19, 2014, Plaintiff appeared again for an administrative hearing before ALJ Michael J. Stacchini at which Plaintiff and a

vocational expert, Donald Slive, testified. (*Id.* at 48–89.) At this hearing, Plaintiff testified that he was unable to participate in the initial hearing because he was suffering flu-like symptoms as well as side effects from medication; he expressly denied that he was under the influence of alcohol or drugs. (*Id.* at 63–65.) Plaintiff also told the ALJ that either the night before or immediately after the hearing on April 8, 2014, he went to an urgent care clinic seeking medical assistance. (*Id.*) The ALJ subsequently subpoenaed the facility and learned that while Plaintiff did in fact visit the facility, he did so more than a week after the first hearing and he sought treatment for back pain and conjunctivitis, not the flu or medicinal side effects he claimed made him appear intoxicated. (*Id.* at 20, 484–503.)

In a thirteen-page decision dated November 14, 2014, the ALJ denied Plaintiff's claims, finding that he was not disabled within the meaning of the Act. (*Id.* at 10–22.) The ALJ determined that Plaintiff had the residual functional capacity to perform jobs that exist in significant numbers in the national economy, notwithstanding the fact that he suffered from several severe impairments and could not perform in his previous role as a manufacturing company sales manager. (*Id.* at 12–13, 20–21.) Although Plaintiff requested that the Social Security Appeals Council review the ALJ's decision, the Appeals Council concluded that there was no basis for granting the request, and the ALJ's decision became the final decision of the Commissioner on April 27, 2016. (*Id*. at 1–6.)

On June 3, 2016, Plaintiff – still represented by counsel – commenced this action, seeking review of the Commissioner's decision with respect to his physical and mental-health impairments. (Doc. No. 2.) On November 18, 2016, the Commissioner timely moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Doc. No. 10.) Plaintiff filed a cross-motion for judgment on the pleadings on March 2, 2017. (Doc. No. 17.) The Commissioner

submitted a memorandum in reply to Plaintiff's motion and in further support of her own on March 23, 2017. (Doc. No. 19.)

## II. LEGAL STANDARDS

Under the Social Security Act, a claimant is deemed "disabled" – and thus entitled to disability benefits – if she demonstrates an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(a)(1); 20 C.F.R. §§ 404.1505(a), 416.905(a). In evaluating disability claims, an ALJ must apply a five-step sequential analysis, 20 C.F.R. § 404.1520(a)(4), which the Second Circuit has summarized as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*DeChirico v. Callahan*, 134 F.3d 1177, 1179–80 (2d Cir. 1998) (quoting *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982)). The claimant bears the burden at the first four steps, and the Commissioner bears the burden at the final step. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 445 (2d Cir. 2012). The ALJ must weigh all medical evidence and other "relevant evidence" he receives, 20 C.F.R. §§ 404.1520b, 416.927(b), but need not resolve all inconsistences, as long as he makes findings supported by substantial evidence. *See Laine v. Soc.*

*Sec. Admin., Comm'r*, No. 07-cv-1251 (RO), 2013 WL 2896968, at \*4 (S.D.N.Y. June 13, 2013) ("The ALJ is not required by the regulations to reconcile conflicting medical testimony, but is required to fully assess the record and provide findings that are supported by substantial evidence in the record.").

A claimant denied disability benefits may appeal a final decision of the Commissioner of Social Security to the district court under 42 U.S.C. § 405(g). A "final decision" occurs when the Appeals Council issues a decision after reviewing a claim, or when the ALJ issues an opinion if the Appeals Council has denied the request for review. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); 20 C.F.R. §§ 404.900(a) (4)–(5), 404.955, 404.981, 422.210(a). Even so, a district court may not disturb an ALJ's decision if it is based on correct legal principles and supported by substantial evidence. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004); *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998). Substantial evidence is "more than a mere scintilla" of evidence; "[i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). The substantial evidence standard "applies not only to basic evidentiary fact-finding but extends to inferences and conclusions drawn from such facts." *Gracia v. Apfel*, No. 97-cv-4035 (SAS), 1998 WL 599714, at \*4 (S.D.N.Y. Sept. 10, 1998). Thus, the Commissioner's "findings of fact, as well as the inferences and conclusions drawn from those findings, are conclusive even in cases where a reviewing court's independent analysis of the evidence may differ from the Commissioner's analysis." *Id.* (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982)). Furthermore, the existence of contrary evidence does not suffice to overturn a denial of benefits if substantial evidence otherwise supports the ALJ's findings. *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). The Court may reject a finding only if "a reasonable factfinder would *have to*

*conclude otherwise*." *Brault*, 683 F.3d at 448 (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)).

In deciding whether the Commissioner's conclusions are supported by substantial evidence, a court must also determine whether the ALJ adhered to the standard for providing the claimant with a full hearing under the Act and its implementing regulations. *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). This requires the court to determine whether the ALJ met his duty to adequately develop the administrative record. *Id.* The duty to develop the record "works in tandem" with the "treating physician rule," which directs the ALJ "to grant controlling weight to the opinion of the claimant's treating physician if the opinion is well supported by medical findings and is not inconsistent with other substantial evidence." *Rosado v. Barnhart*, 290 F. Supp. 2d 431, 438 (S.D.N.Y. 2003) (citing 20 C.F.R. § 404.1527(d)(2)); *see Miller v. Barnhart*, No. 03-cv-2072 (MBM), 2004 WL 2434972, at \*7 (S.D.N.Y. Nov. 1, 2004) ("The Second Circuit's treating physician rule makes the ALJ's duty to develop the record all the more important.").[2]

## III. DISCUSSION

In determining that Plaintiff is not disabled, the ALJ (1) followed the proper legal framework; (2) properly developed the record, providing Plaintiff with a full hearing; and (3) made conclusions supported by substantial evidence. In attempting to overturn the ALJ's ruling, Plaintiff submits three pages of cursory arguments without citation to, or argument concerning, Plaintiff's medical history or the ALJ's decision. (*See* Doc. No. 18 at 5–7.) All are without merit. Accordingly, the Court affirms the determination of the ALJ.

---

[2] The Commissioner of Social Security has since revised its rules to eliminate the treating physician rule; as a result, ALJs are now to weigh all medical evaluations, regardless of their sources, on the basis of how well supported they are and their consistency with the remainder of the record. *See* 20 C.F.R. §§ 404.1520b; 416.920c. However, claims filed before March 27, 2017 are still subject to the treating physician rule, *see id.* § 404.1527(c)(2), and the Court accordingly applies the rule to this case, which was filed on June 3, 2016.

A.  Legal Analysis

The ALJ properly applied the five-step disability analysis set forth above.  First, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since the proffered date of disability, September 7, 2012.  (R. 12.)  As to the second and third factors, the ALJ determined that Plaintiff suffered from several severe impairments (*id.* at 12–13), but that none of these impairments rose to the level of those listed in Appendix 1 (*id.* at 13–14).  The ALJ then assessed Plaintiff's residual functioning capacity and reached the fourth factor of the test, concluding that Plaintiff could not perform his past work as a sales manager.  (*Id.* at 20.)  Finally, at the fifth step, the ALJ determined that given Plaintiff's "age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform."  (*Id.* at 20–21.)  Accordingly, the ALJ applied the proper legal analysis to Plaintiff's claim of disability and determined that he was not disabled within the meaning of the Act.  *See DeChirico*, 134 F.3d at 1179–80.

B.  Development of the Record

The ALJ fulfilled his duties to provide Plaintiff with a fair hearing and to "affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 509 (2d Cir. 2009).  Where, as here, the alleged disability began less than twelve months before the claimant filed his application, the ALJ is statutorily obligated to obtain the claimant's medical history from the date the disability began.  42 U.S.C. § 423(d)(5)(B); 20 C.F.R. § 416.912(b)(1)(ii).  The ALJ clearly met this requirement and there is no evidence to suggest that he failed to develop the record.  In making his determinations as to the severity of Plaintiff's medical condition, the ALJ relied on a number of opinions from three treating sources and three consultative sources – reviewing approximately 200 pages of

treatment notes spanning from October 2012 through July 2014. These records addressed consultations and treatment for each physical and mental ailment claimed by Plaintiff. (*See, e.g.*, *id.* at 334–42 (substance abuse), 362–66 (substance abuse, bipolar disorder, depression, and anxiety), 344–55 (gout), 379–82 (gout and arthritis), 383–97 (gout, arthritis, and neuropathy).) The ALJ also held a hearing – the transcript of which numbers forty-two pages – at which Plaintiff and a vocational expert testified. (*Id.* at 48–89, 334–537.) Plaintiff's argument that the ALJ failed to properly develop the record by neglecting to obtain follow-up opinions from Plaintiff's treating sources is unavailing since where "there are no obvious gaps in the administrative record" and the ALJ "possesse[d] a 'complete medical history,' the ALJ [is] under no obligation to seek additional information." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (quoting *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)). Accordingly, the Court concludes that the ALJ clearly met his responsibility to develop the record.

## C. Sufficiency of the Evidence

Finally, the ALJ's ultimate factual determinations – on Plaintiff's residual functional capacity and the availability of alternative jobs – are supported by substantial evidence. Indeed, the ALJ's opinion makes detailed references to the record and provides extensive explanations for the weight assigned to various pieces of evidence relied on in the decision. The ALJ determined that despite his medical issues, Plaintiff "has the residual functional capacity to perform light work" as defined in 20 C.F.R. § 404.1567(b), with certain exceptions. (R. 14.) The ALJ supported this determination with five-and-a-half single-spaced pages assessing each medical opinion, citing relevant conclusions in those opinions, and explaining the weight assigned to each.

The ALJ's conclusion that Plaintiff's mental impairments – bipolar disorder, depression, anxiety, and substance abuse – did not render him disabled is supported by substantial evidence,

including the opinions of Plaintiff's treating psychiatrist Dr. Andrew Hornstein, consultative examiner Dr. Melissa Antiaris, and non-examining consultant Dr. M. Marks. (*Id.* at 16–17.) The records of each of these doctors, at least partially, supported a conclusion that Plaintiff suffered only moderate limitations from his mental impairments and was generally capable of performing basic tasks. Notably, Dr. Antiaris opined that Plaintiff could relate well with others and perform a number of activities that would allow him to function in a workplace, ultimately finding that his prognosis was "fair." (*Id.* at 17, 363–66.) Even Dr. Hornstein, who had the least optimistic evaluation of Plaintiff, gave Plaintiff a global functioning assessment of 60 (*id.* at 510), indicating only "moderate limitations" (*id.* at 16). Furthermore Dr. Hornstein further noted that Plaintiff indicated a normal, non-depressed mood, that his bipolar disorder was in remission, and that his symptoms had improved through conservative treatment relying on medication and therapy. (*Id.* 16–17, 436–40, 520.) The ALJ also amply explained why he gave the conclusions of some medical practitioners greater weight than others. For example, Dr. Antiaris's opinion was "given significant weight" because it was based upon an in-person examination, supported by specific findings, consistent with her examination conclusions, and consistent with the conclusions of other components of Plaintiffs' medical records. (*Id.* at 16.)

The ALJ's conclusion concerning the severe, but not disabling, scope of Plaintiff's physical impairments – gout, neuropathy, and arthritis – is similarly supported by substantial evidence. With respect to these ailments, the ALJ relied on Plaintiff's treating physicians Dr. Peter Strassberg, Dr. Alfred Becker, and Dr. David Arbit, as well as consultative examiner Dr. William Lathan. (*Id.* at 17–19.) The ALJ's determination was specifically supported by Dr. Strassberg's conclusion that Plaintiff "could lift and carry up to 20 pounds on occasion" and "had no limitation in sitting, pulling, pushing, or in any nonexertional ability" (*id.* at 17), and Dr. Lathan's evaluation

showing Plaintiff could move normally, had full grip strength and hand dexterity, and could perform all "activities of personal care and daily living" (*id.* at 18, 356–58). The ALJ similarly set forth his rationale for assessing the weight of the various examinations and opinions he considered. For example, the ALJ assigned great weight to Dr. Lathan's opinion because Dr. Lathan made numerous specific findings as to Plaintiff's range of movement and demeanor during his examination. (*Id.* at 18.) By contrast, he accorded little weight to the opinions of Dr. Becker because he found them to be conclusory. (*Id.* at 18–19.)

The ALJ's credibility findings as to Plaintiff's treating physicians – Dr. Hornstein, Dr. Strassberg, and Dr. Becker[3] – warrant particular attention. As noted above, while "the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, the opinion of the treating physician is not afforded controlling weight where . . . [that opinion is] not consistent with other substantial evidence in the record." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citation omitted). Here, where the ALJ discounted the opinion of one of Plaintiff's treating physicians, he appropriately explained how that opinion was inconsistent with the evidence in the record. For example, the ALJ awarded Dr. Hornstein's opinion little weight because it conflicted with findings in Dr. Hornstein's own medical records, as well as those of other medical professionals, which reflected that Plaintiff retained significant ability to function normally. (R. 17.) Similarly, the ALJ rejected portions of the opinions of Dr. Strassberg and Dr. Becker indicating that Plaintiff was fundamentally incapable of working because those views were inconsistent with the doctors' own observations of Plaintiff and other record evidence, including, for instance, Plaintiff's conservative course of care and general daily activities. (*Id.* at 18, 19.)

---

[3] Dr. Arbit was also one of Plaintiff's treating physicians, but the ALJ accorded his opinion great weight and did not make an adverse credibility determination. (R. 19.)

Finally, the ALJ sufficiently explained his credibility determination with respect to Plaintiff. While the ALJ did credit that Plaintiff suffered *some* limitation in functioning, the ALJ nevertheless found that Plaintiff's credibility was diminished to the extent that it conflicted with other medical evidence. For example, Plaintiff's documented ability to "engage in activities of daily living" and interact socially with others, coupled with Plaintiff's failure to properly take prescribed medicine and follow a course of treatment, contradicted – or at least undermined – Plaintiff's statements as to the intractable and overwhelming nature of his medical impairments. (*Id.* at 19.) Plaintiff's credibility was further called into question by his conduct at the first scheduled hearing, and his subsequent false testimony that he had gone to urgent care almost immediately before or after the aborted hearing to treat flu-like symptoms exacerbated by a bad reaction to medication. (*Id.* at 20.) Obviously, such false testimony, under oath, is relevant to any credibility determination. *See, e.g.*, *Dexuan Ye v. Lynch*, 639 F. App'x 715, 718 (2d Cir. 2016).

Finally, the ALJ's determination that Plaintiff was capable of performing jobs that existed in significant numbers in the national economy is supported by substantial evidence. In addition to the Department of Labor's Dictionary of Occupational Titles, the ALJ relied on the testimony of Donald Slive, a vocational expert, on this point. (*Id.* at 21.) The ALJ questioned Slive on whether a hypothetical individual with Plaintiff's conditions and limitations would be able to secure employment and perform satisfactorily in that employment. In response, Slive answered in the affirmative and provided three examples of jobs that were compatible with Plaintiff's functionality, each with thousands of national postings. (*See id.* at 21, 83–85.) Plaintiff's counsel also had the opportunity to cross-examine the expert. (*Id.* at 86–88.) Accordingly, the ALJ's conclusion regarding Plaintiff's ability to work productively in broadly available occupations is supported by substantial evidence.

In sum, the ALJ's conclusions are amply supported by medical and vocational-expert evidence, and he adequately explained his reasons for the weight ascribed to the various components of the record before him. Certainly, the Court has no basis upon which to conclude that a reasonable factfinder would inevitably reach a different result. *See Brault*, 683 F.3d at 448. Accordingly, the Court has little trouble concluding that the ALJ's determinations are supported by substantial evidence.

## IV. CONCLUSION

Having carefully reviewed the record, including the transcript of the hearing and the ALJ's decision, the Court finds that the ALJ's analysis clearly adhered to the proper legal standards for making a disability determination. The Court further finds that the ALJ's determination that Plaintiff was not disabled within the meaning of the Social Security Act and implementing regulations was clearly supported by substantial evidence. Accordingly, the Court finds sufficient support for the Commissioner's decision and no basis for setting it aside. For these reasons, IT IS HEREBY ORDERED THAT the Commissioner's motion for judgment on the pleadings is GRANTED. IT IS FURTHER ORDERED THAT Plaintiff's motion for judgment on the pleadings is DENIED. The Clerk is respectfully directed to terminate the motion pending at docket numbers 13 and 17 and close this case.

SO ORDERED.

Dated:     September 27, 2017
           New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/27/17

12